JS 44 – CAND (Rev  11/04)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON PAGE TWO.)

**E-filing**

## I.(a) PLAINTIFFS

FIKRET ASHKAR

## DEFENDANTS

TGC 24 HOUR TRUCK REPAIR INC.: TGC TRUCK REPAIR, INC Does I-XX

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  San Francisco
(EXCEPT IN U.S  PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  San Francisco
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME  ADDRESS  AND TELEPHONE NUMBER)

HIGHMAN, HIGHMAN & BALL,  (415) 982-5563
870 Market St., #467 SF, CA 94102

ATTORNEYS (IF KNOWN)   NORMAN LA FORCE, ESQ.
FORTUNE, DREVLOW, ET AL    (415) 227-2300
560 Mission St., 21st Flr., SF, CA 94105

## II. BASIS OF JURISDICTION (PLACE AN X IN ONE BOX ONLY)

☐1 U.S. Government
   Plaintiff

☒3 Federal Question
   (U.S  Government Not a Party)

☐2 U.S  Government
   Defendant

☐4 Diversity
   (Indicate Citizenship of Parties in
   Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF
(For diversity cases only)                                    AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☐1 Original
   Proceeding

☒2 Removed from
   State Court

☐3 Remanded from
   Appellate Court

☐4 Reinstated or
   Reopened

☐5 Transfered from
   Another district
   (specify)

☐6 Multidistrict
   Litigation

☐7 Appeal to District
   Judge from  Magistrate
   Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐110 Insurance<br>☐120 Marine<br>☐130 Miller Act<br>☐140 Negotiable Instrument<br>☐150 Recovery of Overpayment & Enforcement of Judgment<br>☐151 Medicare Act<br>☐152 Recovery of Defaulted Student Loans (Excl Veterans)<br>☐153 Recovery of Overpayment of Veteran's Benefits<br>☐160 Stockholders Suits<br>☐190 Other Contract<br>☐195 Contract Product Liability<br>☐196 Franchise | **PERSONAL INJURY**<br>☐310 Airplane<br>☐315 Airplane Product Liability<br>☐320 Assault Libel & Slander<br>☐330 Federal Employers Liability<br>☐340 Marine<br>☐345 Marine Product Liability<br>☐350 Motor Vehicle<br>☐355 Motor Vehicle Product Liability<br>☐360 Other Personal Injury | **PERSONAL INJURY**<br>☐362 Personal Injury Med Malpractice<br>☐365 Personal Injury Product Liability<br>☐368 Asbestos Personal Injury Product Liability<br><br>**PERSONAL PROPERTY**<br>☐370 Other Fraud<br>☐371 Truth In Lending<br>☐380 Other Personal Property Damage<br>☐385 Property Damage Product Liability | ☐610 Agriculture<br>☐620 Other Food & Drug<br>☐625 Drug Related Seizure of Property 21 USC 881<br>☐630 Liquor Laws<br>☐640 RR & Truck<br>☐650 Airline Regs<br>☐660 Occupational Safety/Health<br>☐690 Other<br><br>**LABOR**<br>☐710 Fair Labor Standards Act<br>☐720 Labor/Mgmt Relations<br>☐730 Labor/Mgmt Reporting & Disclosure Act<br>☐740 Railway Labor Act<br>☐790 Other Labor Litigation<br>☐791 Empl Ret Inc Security Act | ☐422 Appeal 28 USC 158<br>☐423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐820 Copyrights<br>☐830 Patent<br>☐840 Trademark<br><br>**SOCIAL SECURITY**<br>☐861 HIA (1395ff)<br>☐862 Black Lung (923)<br>☐863 DIWC/DIWW (405(g))<br>☐864 SSID Title XVI<br>☐865 RSI (405(g))<br><br>**FEDERAL TAX SUITS**<br>☐870 Taxes (US Plaintiff or Defendant<br>☐871 IRS - Third Party 26 USC 7609 | ☐400 State Reapportionment<br>☐410 Antitrust<br>☐430 Banks and Banking<br>☐450 Commerce/ICC Rates/etc.<br>☐460 Deportation<br>☐470 Racketeer Influenced and Corrupt Organizations<br>☐480 Consumer Credit<br>☐490 Cable/Satellite TV<br>☐810 Selective Service<br>☐850 Securities/Commodities/ Exchange<br>☐875 Customer Challenge 12 USC 3410<br>☐891 Agricultural Acts<br>☐892 Economic Stabilization Act<br>☐893 Environmental Matters<br>☐894 Energy Allocation Act<br>☐895 Freedom of Information Act<br>☐900 Appeal of Fee Determination Under Equal Access to Justice<br>☐950 Constitutionality of State Statutes<br>☐890 Other Statutory Actions |
| **REAL PROPERTY**<br>☐210 Land Condemnation<br>☐220 Foreclosure<br>☐230 Rent Lease & Ejectment<br>☐240 Torts to Land<br>☐245 Tort Product Liability<br>☐290 All Other Real Property | **CIVIL RIGHTS**<br>☐441 Voting<br>☐442 Employment<br>☐443 Housing<br>☐444 Welfare<br>☐440 Other Civil Rights<br>☐445 Amer w/ disab - Empl<br>☐446 Amer w/ disab - Other | **PRISONER PETITIONS**<br>☐510 Motion to Vacate Sentence Habeas Corpus:<br>☐530 General<br>☐535 Death Penalty<br>☐540 Mandamus & Other<br>☐550 Civil Rights<br>☐555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

LABOR MANAGEMENT RELATIONS ACT  SEC. 29 USC  (Sec 185(a))

## VII. REQUESTED IN COMPLAINT:   ☐ CHECK IF THIS IS A CLASS ACTION    DEMAND $_____ CHECK YES only if demanded in complaint:
UNDER F.R C.P. 23                                                                JURY DEMAND: ☐ YES  ☐ NO

## VIII. RELATED CASE(S)   PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE
IF ANY  NONE          "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)     ☒ SAN FRANCISCO/OAKLAND      ☐ SAN JOSE

DATE   8/17/07          SIGNATURE OF ATTORNEY OF RECORD  NORMAN LA FORCE

1  Norman La Force, State Bar #102772
   Fortune, Drevlow, O'Sullivan & Hudson
2  560 Mission Street, 21st Floor
   San Francisco, CA 94105
3  (415) 227-2300

4
   Attorneys for Defendant
5  TGC 24 Hour Truck Center

6
                              **E-filing**
7
                 UNITED STATES DISTRICT COURT
8
                NORTHERN DISTRICT OF CALIFORNIA
9
                      C 07 4236
10

11 FIKRET ASHKAR,                      | Case No.:

12        Plaintiff/Respondent,        | NOTICE OF REMOVAL OF ACTION
                                        | PURSUANT TO 28 U.S.C. §1441(b)
13     vs.                             | [Federal Question Jurisdiction]

14 TGC 24 HOUR TRUCK REPAIR INC.; TGC
   TRUCK REPAIR, INC., Does I-XX,
15
          Defendants/Petitioners       | COPY
16

17       TO THE CLERK OF THE ABOVE ENTITLED COURT:

18       PLEASE TAKE NOTICE THAT Defendant /Petitioner TGC 24 Hour Truck Center

19 hereby removes the state court action described below to this Court.

20       1. On June 28, 2007, plaintiff Fikret Ashkar commenced an action in the Superior

21 Court of the State of California for the County of San Francisco entitled, Fikret Ashkar, v.

22 TGC 24 Hour Truck Repair, Inc., Case No. CGC07-464703. A copy of the complaint and

23 other State Court filings are attached hereto as Exhibit A.

24       2. On July 6, 2007 the plaintiff served the complaint on TGC 24 Hour Truck Repair,

25 Inc.

26       3. On July 11, 2007 Norman La Force of Fortune, Drevlow, O'Sullivan & Hudson were

27 retained to defend TGC 24 Hour Truck Repair, Inc.

28

                              -1-
   NOTICE OF REMOVAL OF ACTION

1    4. On July 18, 2007 Mr. La Force discussed the case with his client's representatives

2    and on July 19, 2007 sent a letter to them asking them for all documents related to the case.

3    5. Plaintiff's complaint is a complaint for termination from his job as a mechanic at

4    TGC 24 Hour Truck Repair, Inc. Plaintiff alleged the following causes of action, all of which

5    were State law claims only:

6    First Cause of Action for Violation of California Government Code §12940 (Disability

7    discrimination under California's Fair Employment & Housing Act (FEHA);

8    Second Cause of Action under California Labor Code §§201, 203, 218, and 218.5.

9    No where in the complaint did plaintiff allege that he was a member of a labor union

10    subject to a collective bargaining agreement with defendants.

11    6. On August 3, 2007 Norman La Force received plaintiff's employee file and other

12    documents from his client. Included in those documents was the complete Collective

13    Bargaining Agreement between defendant TGC 24-Hour Truck Repair, Inc. and the Peninsula

14    Auto Machinists Lodge No. 1414 and the Machinists Automotive Trades District Lodge No.

15    190 of Northern California of the International Association of Machinists and Areospace

16    Workers union. The documents also included evidence that plaintiff was a member of this

17    union and subject to the collective bargaining agreement.

18    7. Thus, only on August 3, 2007 did counsel for defendant became aware that counsel

19    had both the factual and legal basis under the Labor Management Relations Act, (LMRA) 29

20    U.S.C. §185(a) that plaintiff's claims raised a federal question subject to removal and that

21    plaintiff's claims were completely pre-empted. *Franchise Tax Board v. Construction Laborers*

22    *Vacation Trust,* 463 U.S. 1, 23 (1983).

23    8. Counsel had a long planned vacation from August 9, 2007 to August 13, 2007 and

24    promptly upon his return has had this petition for removal filed such that it is filed within 30

25    days of when it was first ascertained that the case is one which is or has become subject to

26    removal pursuant to 28 U.S.C. §1441(b).

27    9. Pursuant to 28 U.S.C. §1332, this Court has original jurisdiction over this civil

28    action and this defendant can remove this case to this Court pursuant to 28 U.S.C. §1441(b)

NOTICE OF REMOVAL OF ACTION

1   because this case raises a federal question under the LMRA and the LMRA complete pre-

2   empts all State Court claims that plaintiff has asserted.

3       10. Counsel for the served party defendant TGC 24 Hour Truck Repair, Inc. will also

4   be counsel for TGC Truck Repair, Inc. if it is served as both entities are operated under the

5   same management and TGC Truck Repair, Inc. consents to this removal.

6       Wherefore, defendant/petitioner TGC 24 Hour Truck Center prays that

7   this action now pending in the Superior Court of the State of California, County of San

8   Francisco be removed to this Court.

9

10  Dated:  August 17, 2007                          Fortune, Drevlow, O'Sullivan & Hudson

11

12                                          By: _____

13                                              Norman La Force

14                                              Attorney for Defendant
                                                TGC 24 Hour Truck Center

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL OF ACTION

1   LOUIS A. HIGHMAN, CBN 61703
    LAWRENCE BALL, CBN 60496
2   HIGHMAN, HIGHMAN & BALL
    A Professional Law Association
3   870 Market Street, Suite 467
    San Francisco, CA 94102
4   Telephone:  (415) 982-5563

5   Attorneys for Plaintiff Fikret Ashkar

# FILED

San Francisco County Superior Court

JUN 2 8 2007

GORDON PARK-LI, Clerk

BY: _Deborah Steppe_

DEBORAH STEPPE, Deputy Clerk

CASE MANAGEMENT CONFERENCE SET

SUMMONS ISSUED

NOV 3 0 2007 -9ᴼᴼAM

DEPARTMENT 212

6

7

8            In the Superior Court of the State of California

9              In and for the County of San Francisco

10                 Unlimited Civil Jurisdiction

11                                        CGC-07-464703

12   FIKRET ASHKAR                    No.

13        Plaintiff,                  COMPLAINT--
                                      VIOLATION OF CALIFORNIA
14                                    GOVERNMENT CODE SECTION
                                      12940 (DISABILITY
15                                    DISCRIMINATION; FAILURE
                                      TO MAKE REASONABLE;
16       --v-                         ACCOMMODATION FOR
                                      DISABILITY; FAILURE TO
17                                    ENGAGE IN INTERACTIVE
                                      PROCESS RE DETERMINATION
18   TGC 24 HOUR TRUCK REPAIR,        OF DISABILITY;
     INC.; TGC TRUCK REPAIR, INC.;    RETALIATION); CAUSE OF
19   DOES I-XX,                       ACTION BROUGHT UNDER
                                      CALIFORNIA LABOR CODE
20        Defendants.                 SECTIONS 203, 218, AND
                                      218.5 FOR FAILURE TO PAY
21   _____/        WAGES IN TIMELY MATTER AT
                                      TIME OF TERMINATION
22                                    IN VIOLATION OF CALIFORNIA
                                      LABOR CODE SECTIONS 201
23                                    AND 203

24                                        [LABOR]

25        Plaintiff Fikret Ashkar alleges as follows:

26                    FIRST CAUSE OF ACTION

27     (VIOLATION OF CALIFORNIA GOVERNMENT CODE SECTION 12940,
                 BROUGHT AGAINST ALL DEFENDANTS)
28

                                1

Complaint

1.   Plaintiff Fikret Ashkar was employed as a mechanic by defendants TGC 24 Hour Truck Repair, Inc. and TGC Truck Repair, Inc. in San Francisco, California starting on or about March 23, 1999.  He was terminated involuntarily on or about August 15, 2006.

2.   Plaintiff is informed and believes that defendant TGC 24 Hour Truck Repair, Inc. is a California corporation with its principal place of business in San Francisco, California, where plaintiff was at all relevant times herein employed.

3.   Plaintiff is informed and believes that defendant TGC 24 Hour Truck Repair, Inc. is a California corporation with its principal place of business in San Francisco, California, where plaintiff was at all relevant times herein employed.

4.   The true names and capacities, whether individual, corporate, partnership, associate, or otherwise, of defendants sued herein as DOES I-XX, inclusive, are unknown to plaintiff, who therefore sues said defendants by such fictitious names and will pray leave to amend this complaint together with appropriate charging allegations when the same have been ascertained.  Plaintiff is informed and believes and thereupon alleges that each of said fictitiously named defendants is responsible in some manner for occurrences herein alleged, and that plaintiff's damages, as herein alleged, were proximately caused by their conduct.

5. Plaintiff was hired by defendants as a journeyman

Complaint

2

1  mechanic on or about March 23, 1999.

2      6.  On or about May 22, 2006, plaintiff was injured
3  while working on a 1967 truck which had a battery charging
4  problem. To fix the problem, plaintiff needed to check the
5  charging system by using a charging gauge to measure the
6  output of the alternator. To do this task, plaintiff had to
7  climb up on the bumper of the truck stand on the radiator and
8  valve cover to reach the accelerator lever to increase the
9  RPMs.  He used his hand to adjust the accelerator lever.
10  While he was doing this, the clutch exploded and something
11  hit him on the right side of his head behind his ear.  He was
12  bleeding from this area.  He got down from the engine and saw
13  debris on the ground.

14      7.  Plaintiff reported the incident to Service Manager
15  Randy Scott.  Scott falsely accused plaintiff of blowing the
16  engine. The President, John McGuire, also came out to find
17  out what happened.  McGuire saw swelling behind plaintiff's
18  ear and told him to go to Bay Medical Center to see a doctor.
19  Because plaintiff's neck hurt, the doctor at Bay Medical
20  Center put plaintiff on modified work and specified that he
21  should not reach above his head.

22      8.  When plaintiff returned to defendants' shop at about
23  noon, defendants told him he was suspended for three days.

24      9.  When plaintiff returned to work after his
25  suspension was over on May 25, 2006, his treating physician
26  had indicated in a note in writing to defendants that as of
27  May 23, 2006, plaintiff was to be put on modified work duty

28

3

Complaint

1  with the following restrictions:  "limit bending of neck,
2  looking overhead." This restriction remained in effect until
3  on or about June 16, 2006, when plaintiff's health provider
4  wrote a note indicating, "Continue modified work with the
5  following restrictions:  Limited lifting, pushing, pulling,
6  20 lbs., no overhead reaching, limited rotation of the neck."
7  This restriction remained in effect until on or about June
8  29, 2006, when plaintiff's health provider put on the
9  following restrictions in a note: "Limited lifting, pushing,
10 pulling 25 lbs.  No overhead reaching."  This last modified
11 restriction remained in effect thereafter for the duration of
12 plaintiff's employment.
13     10.  When plaintiff returned to work after his
14 suspension was over on May 25, 2006, plaintiff is informed
15 and believes that Service Manager Randy Scott was aware of
16 the restrictions which his health provider had placed on him,
17 as aforesaid.  Scott was also aware that plaintiff had a
18 disability involving his neck, shoulders, and upper back, and
19 loss of hearing, related to the May 22, 2006 injury which had
20 occurred at work.  At this time, Scott gave plaintiff a
21 workers' compensation form to fill out and told him to go
22 upstairs to talk to John McGuire, the President.  McGuire was
23 not there yet, so plaintiff told Scott he would wait for
24 McGuire and go upstairs when he arrived.
25     11.  Scott told plaintiff to go home because plaintiff
26 did not go upstairs.
27     12.  Plaintiff called McGuire from home later that
28

4

Complaint

1  morning.  McGuire told plaintiff to forget his dignity, and

2  come back to work because they needed plaintiff to work as a

3  technician.

4      13. Plaintiff returned to work at 11 a.m. that same day,

5  May 25, 2006, and spoke with McGuire.

6      14.  McGuire told plaintiff to forget about the doctor's

7  work restrictions.  He said, "You know what I mean."

8      15.  After this conversation, defendants gave plaintiff

9  difficult jobs including installing a transmission, which

10 required plaintiff to perform work in excess of his doctor's

11 work restrictions, and in violation of his doctor's orders,

12 which defendants knew about.

13     16.  The transmission installation job put a strain on

14 plaintiff's neck, shoulders, and upper back, which is where

15 the problem was, and aggravated his disability/condition in

16 connection therewith.  Numerous other jobs defendants gave

17 plaintiff also violated the doctor's work restrictions, and

18 acted to aggravate plaintiff's injury/disability.

19     17.  Plaintiff's neck and shoulders were not getting

20 better and on July 7, 2006, plaintiff's doctor asked

21 plaintiff what kind of jobs plaintiff was doing, and whether

22 the employer was following the physical restrictions the

23 doctor had put on plaintiff's work activity. Plaintiff told

24 the doctor that the employer was not following the

25 limitations the doctor had imposed on his work activity, and

26 was repeatedly making him do work which was beyond the

27 restrictions imposed.

28

Complaint

5

1    18.  Plaintiff is informed and believes that on or about
2  that same day (on or about July 7, 2006), plaintiff's
3  physician called defendants to complain about the employer
4  not adhering to the restrictions on work which the doctor had
5  been providing for plaintiff.

6    19.  Later in the day on or about July 7, 2006, Randy
7  Scott told plaintiff that the doctor had called about
8  plaintiff not receiving modified duty.  Scott assigned
9  plaintiff a task to scrape and paint the building, which was
10  a difficult task which was not good for plaintiff's neck and
11  shoulders, and which ignored the doctor's physical
12  restrictions which the doctor had placed on the work
13  plaintiff could do.  Plaintiff protested the work as being
14  contrary to the doctor's restrictions and orders, but Scott
15  made plaintiff do the work despite the fact it was violative
16  of the doctor's restrictions and orders, and despite
17  plaintiff's protest.

18    20.  Also, on or about July 7, 2006, plaintiff had
19  discovered additional work that needed to be done on a
20  vehicle.  Pursuant to defendants' policy, in such a case, the
21  technician who makes the discovery of additional work which
22  needs to be done, is given a sticker (aka "spiff") which
23  gives the employee credit for $10 or $20.  Randy Scott told
24  plaintiff that before plaintiff could get a spiff for this
25  discovery of additional work, the customer would have to
26  authorize the additional work.  Plaintiff accordingly
27  thereafter waited to see if he would get the spiff.

28

6

Complaint

1      21.  From the time of the accident on (from
2  approximately May 22, 2007 onward), plaintiff was seeing the
3  doctor once a week and going to physical therapy twice a week
4  for his neck, shoulders, and upper back.  Defendants stopped
5  paying plaintiff for his time spent at the doctor or at
6  physical therapy, after a short time, so plaintiff decided to
7  make the doctor appointments for 7 a.m., before work, and the
8  physical therapy appointments for 4 p.m., after work.

9      22.  On or about July 14, 2006, plaintiff had to see a
10  different doctor, and the appointment was made for 10 a.m.
11  Plaintiff had given Randy Scott, the Service Manager, a copy
12  of the appointment slip the week before the appointment.
13  When plaintiff left the shop at or about 9:45 a.m. in order
14  to get to the doctor on time, he told Scott he was going to
15  the doctor. Scott said, "Oh, you're striking again."

16      23.  When plaintiff returned to the shop at or about
17  11:45 a.m. on July 14, 2006, after his doctor's appointment,
18  Randy Scott told plaintiff that he should have told him ahead
19  of time about the appointment.  Plaintiff had in fact
20  informed Scott about the appointment the week before the
21  appointment.

22      24.  On or about July 14, 2006, the same day plaintiff
23  returned from the doctor's appointment at or about 11:45
24  a.m., plaintiff was thereafter present when an employee named
25  Mark Scardino and Randy Scott (the Service Manager) were
26  discussing a spiff for another technician.  Plaintiff brought
27  up the fact he had not been given a spiff for July 7, 2006,
28

7

Complaint

1   and stated he should have been.  In response, Randy Scott got
2   mad and told plaintiff to go back to work or he would fire
3   plaintiff. Defendants then sent plaintiff home at or about
4   12:38 p.m.

5       25.  Plaintiff telephoned McGuire from home, and
6   complained that he had been sent home because he had opposed
7   not getting a spiff which he was entitled to.  McGuire said
8   it didn't seem fair to him, and he wasn't there now, but he'd
9   look into it later.

10      26.  When plaintiff returned to work on Monday morning,
11  July 17, 2006, there were two written letters of warning
12  waiting for him in the time card rack along with the spiff he
13  had not received before.  One of the two written letters was
14  a Letter of Reprimand for allegedly arguing with the service
15  manager about the spiff on July 14, 2006.  The second of the
16  two written letters was a Letter of Reprimand for allegedly
17  not giving any advance notice of plaintiff's doctor
18  appointment to Randy Scott.

19      27.  On or about July 20, 2006, plaintiff talked to
20  McGuire in his office, and showed him the warnings and said
21  they weren't fair.  He also pointed out that one of the
22  warnings was partially illegible.  Plaintiff told McGuire
23  that since the time he was injured, he had been treated
24  unfairly in different ways, and these warnings were one of
25  the ways he was being treated unfairly since his injury.
26  McGuire said plaintiff was the one who had blown the engine
27  on May 22, and because of that he was injured.  Plaintiff

28

8

Complaint

1  said that wasn't true, that he hadn't blown the engine.

2  McGuire told plaintiff not to worry about the service

3  manager, and not to worry about the warnings.  He said he

4  knew plaintiff was a good technician.  McGuire brought up an

5  incident in which a customer had complained he was

6  overbilled, in that the customer had been informed by someone

7  that part of the repairs he was being billed for had been

8  caused by the technician working on the vehicle, which had

9  caused certain damage to the engine when he was fixing

10  something.  McGuire indicated he was displeased that the

11  company had to do that part of the repair for free after a

12  technician had reported to the customer that part of the

13  repairs were for damage done by the technician.  McGuire said

14  he had heard from someone that they had seen plaintiff with

15  paperwork in his hand and on the phone, and thought he was

16  the one who had tipped off the customer.  Plaintiff denied

17  talking to the customer, and stated that he was not the

18  person who had worked on that vehicle, and that he hadn't

19  called the customer or had anything to do with it. Plaintiff

20  asked McGuire if he could do anything about the two Letters

21  of Reprimand he had received, and McGuire said not now.

22  McGuire said if plaintiff had any additional information

23  about how he had been treated unfairly or differently from

24  others after his injury to send it to him by e-mail.

25        28.  Accordingly, plaintiff sent McGuire an e-mail on

26  July 31, 2006, giving additional information related to how

27  he was being treated unfairly and differently than others

28

9

Complaint

1  were after plaintiff's injury.

2      29.  In response to plaintiff's July 31, 2006 e-mail,
3  McGuire wrote back to plaintiff an e-mail on the same date
4  stating, "Thank you for your interest in our service
5  operation.  I will review your comments shortly, and inform
6  you of my impressions regarding appropriate action."
7  However, McGuire never thereafter got back to plaintiff in
8  this regard.

9      30.  Plaintiff continued thereafter to have to perform
10  work assignments for defendants which ignored the doctor's
11  orders on restrictions on physical activity which had been
12  communicated to defendants.

13      31.  On or about August 15, 2006, Randy Scott, the
14  Service Manager, assigned plaintiff and another employee who
15  had injured his finger on the job to a job which required
16  plaintiff and the other employee to lift a piece of equipment
17  weighing approximately 70 pounds and take it into a machine
18  shop.  At that time, plaintiff was restricted from lifting
19  over 25 pounds by his doctor's orders.  Defendants knew of
20  this restriction, and consciously chose to ignore it.

21      32.  When plaintiff returned from the machine shop,
22  Randy Scott told plaintiff to go to McGuire's office.
23  McGuire yelled at plaintiff that he had scheduled himself for
24  GM training classes in Los Angeles.

25      33.  In this regard, plaintiff on a number of occasions
26  had had to take GM training classes in the Los Angeles area.
27  There had never been any issue with that.  Paul, the business
28

10

Complaint

1  manager, had told plaintiff he would need to pass a basic

2  truck electric test on-line in order to take future GM

3  training classes in Los Angeles. Randy Scott, the service

4  manager, had told a co-worker of plaintiff named Terry to go

5  upstairs to the computer to show plaintiff how to take the

6  truck electric test on line. Terry went upstairs and

7  assisted plaintiff in signing up to take the test on line.

8  Plaintiff is informed and believes that the information used

9  to sign up plaintiff to take the test on line was then

10  automatically turned into enrollment of plaintiff to take GM

11  Training by the GM Training website.

12      34. When McGuire yelled at plaintiff on August 15, 2006,

13  that he had scheduled himself for GM Training classes in Los

14  Angeles, and had acted behind their back, plaintiff said that

15  was not true. Plaintiff told McGuire that his understanding

16  was that he was enrolled automatically when Terry had helped

17  him sign up online to take the electric truck test (which was

18  a prerequisite to take additional GM training classes).

19  Plaintiff further stated that it was his understanding that

20  the enrollment could be cancelled (without penalty or cost),

21  and that the employer ultimately had to pay the bill for the

22  training for the training to happen. Plaintiff told McGuire

23  that Terry was the one who had assisted him in signing up for

24  the truck electric test, and that his information had been

25  put in the computer system then to enroll automatically, and

26  that his understanding was that other employees had followed

27  the same procedure and been enrolled for GM training, with

28

11

1   the employer having the option to cancel it (just like they
2   had the option to cancel it for plaintiff).

3       35.  McGuire called in Terry then, but then told Terry
4   to leave without letting Terry speak.

5       36.  McGuire said the employer would decide when
6   plaintiff would go to training, and told plaintiff it was
7   "over", and fired him. Plaintiff's understanding of the
8   procedure was that the company would learn about the proposed
9   training before it happened, and then would choose to
10  authorize it if it wished plaintiff to take the course(s)
11  indicated.  Plaintiff was unaware that there would be any
12  penalties which defendants would have to pay in case of a
13  cancellation, and had not been told that.  As far as
14  plaintiff was aware, he was following correct procedure, and
15  the procedure followed by other employees of defendants.

16      37.  Plaintiff was unlawfully terminated by defendants
17  on August 15, 2006.

18      38.  Defendants consistently ignored the doctor's
19  restrictions on plaintiff doing certain types of work from
20  May 25 to August 15, 2007, and repeatedly during this period
21  required plaintiff to do jobs which required performance of
22  certain duties in excess of and in disregard of the
23  restrictions which the doctor had ordered regarding
24  plaintiff, and which had been communicated to defendants.

25      39.  After terminating plaintiff on August 15, 2006,
26  defendants sent a partial final paycheck to plaintiff along
27  with a letter dated August 18, 2006, which plaintiff did not

28

                            12

Complaint

1  receive until August 23, 2006. In this letter to plaintiff
2  dated August 18, 2006, defendants indicated they were
3  withholding part of plaintiff's vacation pay in reserve
4  pending the return of company uniforms.

5      40.  Plaintiff returned his company uniforms on August
6  18, 2006.

7      41.  Defendants continued to withhold the balance of
8  plaintiff's vacation pay until they finally sent him a check
9  for the balance of the vacation pay.  The check date for the
10 balance of the vacation pay was August 25, 2006, but
11 plaintiff did not receive the check until September 6, 2006.

12     42. Plaintiff has filed an administrative complaint of
13 discrimination with the California Department of Fair
14 Employment and Housing against defendants, and has met all
15 necessary administrative requirements prior to filing the
16 judicial action herein in full and in a timely fashion.

17     43.  Defendants and each of them have violated various
18 sections of the California Fair Employment and Housing Act,
19 including, without limitation, as follows:

20          (a) Defendants and each of them violated Government
21 Code Section 12940(a) in that they disciplined and  discharged
22 plaintiff,   and   otherwise   discriminated   against   him   in
23 compensation and/or in terms, conditions, or privileges of
24 employment because of his disabilities and his having sought a
25 reasonable accommodation for his disabilities.

26          (b) Defendants and each of them violated Government
27 Code Section 12940(m) in that they failed to make reasonable
28

                        13
   Complaint

1   accommodations   for   the   known   physical   disabilities   of
2   plaintiff.

3           (c) Defendants and each of them violated Government
4   Code Section 12940(n), in that said defendants failed to
5   engage in a timely, good faith, interactive process with
6   plaintiff to determine effective reasonable accommodations, if
7   any, in response to a request for reasonable accommodation by
8   an employee with a known physical disability or known medical
9   condition.

10          (d) Defendants and each of them violated Government
11  Code Section 12940(h) in that they disciplined and discharged
12  plaintiff and discriminated against him in compensation and/or
13  in terms, conditions, or privileges of employment because he
14  had opposed practices forbidden under the Fair Employment and
15  Housing Act, including, without limitation, in that he had
16  persisted in seeking a reasonable accommodation for disability
17  (which defendants had repeatedly denied him), and had opposed
18  defendants'   attempts   to   deny   allowing   him   a   reasonable
19  accommodation for disability and defendants' discriminating
20  against him related to his disability.

21      44.   As a proximate result of said violations of the
22  California Fair Employment and Housing Act by defendants,
23  plaintiff has sustained, and continues to sustain, economic
24  damages in an amount to be shown according to proof.

25      45.   As a further proximate result of said violations
26  of   the   California   Fair   Employment   and   Housing   Act   by
27  defendants, plaintiff has suffered, and continues to suffer,
28

14

<u>Complaint</u>

1  pain and suffering, physical injury, emotional distress,
2  mental anguish, shame, embarrassment, humiliation, trauma, and
3  injury to reputation, and is entitled to an award of damages
4  to compensate him therefor, in an amount to be shown according
5  to proof.

6      46.  Said defendants' violation of plaintiff's rights
7  under the California Fair Employment and Housing Act, as
8  aforesaid, has been malicious and oppressive, and plaintiff is
9  entitled to an award of punitive and exemplary damages
10 therefor.

11     47.  Plaintiff has been compelled to engage the services
12 of attorneys in order to prosecute the action herein, and is
13 accordingly entitled to an award of reasonable attorneys' fees
14 and costs, according to proof.

15     WHEREFORE, plaintiff prays judgment against defendants
16 and each of them as set forth below.

17               SECOND CAUSE OF ACTION

18       (CAUSE OF ACTION BROUGHT UNDER CALIFORNIA LABOR CODE
       SECTIONS 203, 218, AND 218.5 FOR FAILURE TO PAY WAGES IN
19     TIMELY MATTER AT TIME OF TERMINATION IN VIOLATION OF
       CALIFORNIA LABOR CODE SECTIONS 201 AND 203, BROUGHT
20                   AGAINST ALL DEFENDANTS)

21     48.  Plaintiff refers to the allegations of paragraphs
22 1-41 of this complaint, and incorporates the same herein by
23 this reference as though set forth in full.

24     49.  Under California Labor Code Section 201, an
25 employer must pay a discharged employee all wages earned and
26 unpaid immediately upon termination.

27     50.  In violation of California Labor Code Section 203,
28

                              15
Complaint

1  defendants willfully failed to pay plaintiff wages they owed
2  him at the time of his termination.

3      51.  Plaintiff did not receive all of the wages he had
4  earned until on or about September 6, 2007, to be shown
5  according to proof.

6      52.  Pursuant to California Labor Code Section 203, the
7  willful failure to pay plaintiff his wages owed, in full, at
8  the time of his termination, gives rise to a statutory penalty
9  in an amount equal to the wages of plaintiff continuing as a
10  penalty from the due date of the wages (August 15, 2006) until
11  the date (on or about September 6, 2006) when the wages owing
12  him at the time of his termination were finally paid him in
13  full, to be shown according to proof.

14      53.  Plaintiff has had to hire attorneys to prosecute
15  this action, and pursuant to California Labor Code Sections
16  203, 218, and 218.5, plaintiff is entitled to recover an award
17  of reasonable attorneys' fees and costs, in an amount to be
18  shown according to proof.

19      WHEREFORE, plaintiff prays judgment against defendants
20  and each of them as follows:

21      1.  For general damages, according to proof;

22      2.  For special damages, according to proof;

23      3.  For  punitive  and  exemplary  damages,  according  to
24  proof;

25      4.  For  statutory  penalties  for  violations  of  the
26  California Labor Code, according to proof;

27      5.  For an award of reasonable attorneys' fees and costs,

28

16

Complaint

1  according to proof;

2       6.  For costs of suit; and

3       7. For such other and further relief as this Court deems

4  just and proper.

5  DATED:   June 27, 2007.

6                                  LOUIS A. HIGHMAN
                                   BRUCE J. HIGHMAN
7                                  HIGHMAN, HIGHMAN & BALL

8

9                              By
                                   Attorneys for Plaintiff
10                                 FIKRET ASHKAR

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17

Complaint

CASE NUMBER: CGC-__-464703 FIKRET ASHKAR VS TGC 24 HOUR TRUCK REPAIR, INC. et

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

**DATE:**   NOV-30-2007

**TIME:**   9:00AM

**PLACE:**   **Department 212**
   **400 McAllister Street**
   **San Francisco, CA  94102-3680**

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference

However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed, served and lodged in Department 212 twenty-five (25) days before the case management conference

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint  Proof of service subsequently filed with this court shall so state.

### ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A MANDATORY SETTLEMENT CONFERENCE OR TRIAL.** (SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint  All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

Superior Court Alternative Dispute Resolution Coordinator
400 McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3876

See Local Rules 3.6, 6.0 C and 10 D re stipulation to commissioners acting as temporary judges

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

| | FOR COURT USE ONLY |
|---|---|
| | (SOLO PARA USO DE LA CORTE) |

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
TGC 24 HOUR TRUCK REPAIR, INC.;
TGC TRUCK REPAIR, INC.;
DOES I-X,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
FIKRET ASHKAR

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of California, County of San Francisco
400 McAllister Street
San Francisco, California 94102

CASE NUMBER:
*(Número del Caso):* CGC - 07 - 464703

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Louis A. Highman #61703, Lawrence Ball #60496, HIGHMAN, HIGHMAN & BALL
870 Market Street, Suite 467, San Francisco, California 94102      (415) 982-5563

DATE:         JUN 2 8 2007          Gordon Park-Li    Clerk, by   Deborah Steppe              , Deputy
*(Fecha)*                                               *(Secretario)*                              *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]
SUPERIOR COURT OF CALIFORNIA COUNTY OF SAN FRANCISCO

**NOTICE TO THE PERSON SERVED: You are served**
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc. | www.USCourtForms.com