

# TGC 24-HOUR TRUCK REPAIR, INC.

COLLECTIVE BARGAINING AGREEMENT

September 1, 2004 – September 1, 2006

INTERNATIONAL ASSOCIATION OF MACHINISTS & AEROSPACE WORKERS, AFL-CIO
MACHINISTS AUTOMOTIVE TRADES DISTRICT NO. 190
PENINSULA AUTO MACHINISTS LOCAL LODGE NO. 1414

## TABLE OF CONTENTS

SECTION 1 - EMPLOYMENT ..................................................................................................1

SECTION 2 - UNION SECURITY ............................................................................................1

SECTION 3 - SENIORITY .........................................................................................................2

SECTION 4 - HOURS, OVERTIME AND GUARANTEE ......................................................2

SECTION 5 - TEMPORARY AND EXTRA EMPLOYEES ....................................................4

SECTION 6 - WORK RULES ....................................................................................................4

SECTION 7 - SHOP STEWARDS .............................................................................................4

SECTION 8 - TOOL INSURANCE ...........................................................................................4

SECTION 9 - SERVICE MEETINGS, INSURANCE, CAMPAIGNS AND DRIVES ............5

SECTION 10 - UNIFORMS .......................................................................................................5

SECTION 11 - GRIEVANCE PROCEDURE, ADJUSTMENT BOARD AND ......................5

SECTION 12 - ILLEGAL WORK AND ACTIVITIES (MOONLIGHTING) .........................6

SECTION 13 - LICENSE REQUIREMENTS ..........................................................................6

SECTION 14 - NO STRIKES OR WORK STOPPAGES OR LOCKOUTS ............................7

SECTION 15 - VACATIONS .....................................................................................................7

SECTION 16 - LEAVE OF ABSENCE FOR UNION BUSINESS ..........................................8

SECTION 17 - HOLIDAYS .......................................................................................................9

SECTION 18 - WAGES ............................................................................................................10

SECTION 19 - TECHNOLOGICAL CHANGE .....................................................................10

SECTION 20 - PAYMENT OF WAGES ................................................................................10

SECTION 21 - HIGHER WAGES ...........................................................................................10

SECTION 22 - APPRENTICESHIP - (INDENTURED) .........................................................11

SECTION 23 - APPRENTICE TRAINING FUND ................................................................12

SECTION 24 - HEALTH, LIFE, DENTAL, PRESCRIPTION DRUG, VISION ..................12

SECTION 25 - A & S DISABILITY PLAN ...................................................................... 13

SECTION 26 - RETIREE HEALTH AND WELFARE ................................................. 13

SECTION 27 - PENSION PLAN ..................................................................................... 13

SECTION 28 - JURY DUTY ........................................................................................... 13

SECTION 29 - NON-DISCRIMINATION ..................................................................... 14

SECTION 30 - MANAGEMENT RIGHTS .................................................................... 14

SECTION 31 - DRUG AND ALCOHOL TESTING ..................................................... 14

SECTION 32 - UTILITY MECHANIC .......................................................................... 15

SECTION 33 - EXPIRATION AND REVISION ........................................................... 16

THIS AGREEMENT by and between **T.G.C. 24-HOUR TRUCK REPAIR, INC.** (hereinafter referred to as the "Employer") and PENINSULA AUTO MACHINISTS LODGE NO. 1414, and MACHINISTS AUTOMOTIVE TRADES DISTRICT LODGE NO. 190 of Northern California of the International Association of Machinists and Aerospace Workers (hereinafter referred to as the "Union") covers the employment of all employees employed by the Employer, within the jurisdiction of District Lodge No. 190, engaged in the repair and maintenance of all automotive and all types of electrical and combustion engines and all erection and construction work done by the Employer, whether done at the Employer's plant or at an industrial or construction job site, coming under the jurisdiction of the Union as outlined in the Constitution of the International Association of Machinists and Aerospace Workers.

## SECTION 1 - EMPLOYMENT

**1.1** This Agreement shall cover all employees in the following classifications: Journeymen, Automotive Mechanics, Machinists, Motorcycle, Electrical, Fender, Body, Radiator, Frame, Welders, Trimmers, Radio, [Erection and/or Construction Machinists and Heavy Duty Repairmen, if employed by the Employer if done at the Employer's plant or any industrial or construction job site,] Specialists and Apprentices; also Foremen, Testers, Towermen, Dispatchers, Service Salesmen, and all other mechanics working on automotive or electrical equipment.

**1.2** Journeymen shall have served an apprenticeship as more fully prescribed in this Agreement or otherwise have acquired the knowledge, experience and ability to perform work assigned them within a reasonable time and in a satisfactory manner.

## SECTION 2 - UNION SECURITY

**2.1** Every person performing work covered by this Agreement who is a member of the Union shall, as a condition of employment or continued employment, remain a member in good standing of the Union. Every other person covered by this Agreement and employed to perform work covered by this Agreement shall be required, as a condition of employment, to apply for and become a member of and to maintain membership in good standing in the Union on or after the expiration of thirty-one (31) continuous or accumulative days of employment. **For the purpose of this Section "members in good standing" shall be defined to mean employee members in the Union who tender their periodic dues and initiation fees uniformly required as a condition of acquiring or retaining membership.** Membership in the Union shall be available to any such person on the same terms and conditions generally applicable to other members.

**2.2** If Federal law is hereafter amended to permit a lesser requirement for union membership as a condition of employment than provided in this section, such lesser requirement shall automatically apply to this Agreement.

**2.3** The Company shall be required to discharge any employee pursuant to this section upon written notice from the Union of such employee's non-compliance with this section.

**2.4** The Employer shall be the judge of the competency of the employee.

2.5    The Employer will notify the Union in writing as to the full name, address, telephone number, classification of work, shift, wage rate, date of hire, Social Security Number, date of birth, place of birth (state, province, nation) of each new employee who performs bargaining unit work within seven (7) calendar days of employment with the Employer.

## SECTION 3 - SENIORITY

3.1    Seniority shall prevail in the reduction of forces and the re-employment of Employees. Seniority shall date from day of hiring, but no seniority rights shall accrue thereunder until after a probationary period of ninety (90) days. At the end of the probationary period, the employee shall be classified as a regular and competent employee.

3.2    In layoffs and rehire where the senior employee is qualified to perform the required task, seniority shall prevail. Seniority shall be lost for the following reasons only: voluntarily leaving the employ of the Company, discharge for just cause, failure to return to work within five (5) days after recall to work by written notice, and because of not being recalled to work within ninety (90) days after layoff. The Company will give written notice of layoff or discharge of an employee who has been employed thirty (30) days or more at time of same with copy to Union. Employees laid off shall keep the Company advised in writing of their correct mailing address. The Company shall recall employees by registered letter addressed to their last known address, or may contact by phone. Employees recalled after layoff shall notify the Company immediately upon receipt of notice of recall as to whether or not they will return to work within the five (5) day period. Employees who have been laid off and who are rehired more than ninety (90) days after layoff lose seniority and start as new employees.

3.3    Supervisory employees promoted out of the bargaining unit shall retain seniority and shall continue to accumulate seniority for a period of one year from the date of said promotion, and shall thereafter retain, but not accumulate, seniority over employees in the bargaining unit.

3.4    Whenever an employee is hired, discharged, quits, or is laid off, the Union shall be notified of such fact in writing by the Employer, within forty-eight (48) hours thereafter.

3.5    The Employer shall furnish to the Union a seniority roster of the employees, including their rates of pay and classifications, quarterly.

## SECTION 4 - HOURS, OVERTIME AND GUARANTEE

4.1    Eight (8) hours shall constitute a regular day's shift between the hours of 7 A.M. and 6 P.M. The lunch period shall be in the middle of the shift and shall be one (1) hour unless agreed otherwise. Forty (40) hours shall constitute a regular week's work of five (5) consecutive days from Monday through Friday.

2

4.2   With the voluntary consent of the employee or employees directly involved, the Employer may assign a regular week's work of five (5) consecutive days from Tuesday through Saturday inclusive. Such a regular week's work shall be paid for at the regular rate. Where more than one employee requests to work the Tuesday through Saturday work week, seniority and qualifications shall prevail.

4.3   Any shift immediately following a regular day shift or commencing during any period of a day shift shall be considered a night shift. Employees working on such a shift shall be paid One Dollar and Ninety-two Cents ($1.92) per hour above the regular day shift as set forth herein. A subsequent shift shall be known as a midnight shift and shall be paid Two Dollars and Eighty-nine Cents ($2.89) per hour above the regular day rate. The Employer shall give at least one (1) week's notice to the employee of the change of shift work. There will be no shift change made to avoid holiday pay.

4.4   Time and one-half (1½) shall be paid for all hours worked before or after an established work shift to a maximum of three (3) hours. Any hours worked over the eleventh (11th) hour in any one day shall be paid for at the rate of double time. Double time shall be paid for the twelfth (12th) hour and for the forty-eighth (48th) hour and over. Any call back shall be at double time. Overtime shall be distributed equally among employees covered by this Agreement wherever and whenever practical. Employees' sixth (6th) and seventh (7th) days and holidays shall be considered as overtime days.

4.5   Employees working on their sixth (6th) and seventh (7th) days shall be guaranteed eight (8) hours' work or pay therefor at double time. Employees working on any of the holidays specified in Section 12 hereof shall be guaranteed eight (8) hours' work or pay therefor at double time in addition to the pay for the holiday.

4.6   For purposes of this section, involuntary absence due to injury on the job, which is compensable under the Workers' Compensation Law, shall be considered time worked.

4.7   Regular employees shall be guaranteed forty (40) hours' work or pay at the regular straight-time rate, provided, however, that work on the sixth day, seventh day, holidays or overtime shall be deemed to be in addition to work in the applicable work week and shall not be used for the purpose of computing the guaranteed work week. This guarantee shall not apply in a case of discharge for cause, voluntary layoffs, or failure to report for work. Regular employees who are laid off at the end of any work week, due to slackness of work, may be recalled to work as temporary employees in any succeeding week. No temporary employee shall be employed while regular employees are laid off for lack of work.

4.8   **Employees are expected to take a lunch break near the middle of their shift. Employees who fail to take the lunch break will be subject to discipline.**

## SECTION 5 - TEMPORARY AND EXTRA EMPLOYEES

5.1     Temporary and extra employees shall be defined as employees employed as extra help for less than one week's work and shall receive not less than one day's pay when employed. Any employee who is employed for less than a week's work between Monday and Friday, or Tuesday and Saturday, shall be paid ten percent (10%) above his rate of pay. Any employee who voluntarily leaves his/her place of employment shall not be paid the ten percent (10%) above his/her rate of pay. In the event an employee reports for work and has not received notification from the Employer (not less than the preceding work day) not to report for work, he/she shall receive one (1) day's pay.

## SECTION 6 - WORK RULES

6.1     Nothing contained herein shall prohibit the Employer from promulgating uniform work rules. Before any such new uniform work rules become effective, they shall be submitted to the Union for review. Such rules shall become effective within thirty (30) days following submission to the Union for review unless the Union objects to the implementation thereof, in which case those rules objected to will not be implemented pending negotiations as to the propriety of the rules brought into question by the Union. If, within sixty (60) days after submission, the Employer and the Union are unable to agree as to the propriety of any such rule, the matter may be resolved through the grievance procedure in the Agreement.

## SECTION 7 - SHOP STEWARDS

7.1     The Employer agrees that members of the Union may choose from the regular employees a representative or steward to act on behalf of the Union in any capacity assigned to such representative or steward by the Union, provided, however, that such activity on the part of the representative or steward shall not interfere with the normal and regular operations. The Employer agrees that officers, business representatives of the Union and shop stewards shall not be discriminated against on account of their union activities. It is agreed by both parties hereto that the duly authorized representative of the Union may visit the establishment of the Employer for the purpose of carrying out and enforcing the terms of this Agreement.

7.2     The Employer shall have one (1) shop steward who, for purposes of layoff, shall have super-seniority.

## SECTION 8 - TOOL INSURANCE

8.1     The Employer shall be responsible for the replacement value of an employee's tools stolen from the premises of the Employer while such premises are closed for business, or when the mechanical department is closed for business, or when the tools were secured by being locked up, or by reason of fire in the Employer's premises at any time. The employee and the Employer have an obligation to maintain a current inventory of the tools with the Employer and keep his/her tools

locked when he/she is absent from the mechanical department. All power tools shall be furnished by the Employer. However, with the Employer's written consent, an employee may provide power, pneumatic or electric tools, which the employee shall maintain in good working condition, for which the employee shall be reimbursed a monthly amount equal to 2% of the tool's original cost for each such tool furnished by an employee during any month. The above shall be paid at least quarterly as a reimbursed expense, without withholding, unless the IRS advises that withholding is required. The Union shall be notified in writing of all employees who are participating in this plan together with a list of tools furnished and original cost, plus any changes, prior to the use of such tools. All such tools furnished by an employee shall be included in the current inventory.

**8.2    The Employer Agrees to install a compressed air dryer system for the shop air tool supply.**

**8.3    The Employer may discuss sharing the cost of repairs or replacement of unserviceable power tools on an individual basis.**

## SECTION 9 - SERVICE MEETINGS, INSURANCE, CAMPAIGNS AND DRIVES

9.1  The Union agrees to cooperate with the Employer in holding voluntary service instruction meetings and in encouraging the attendance of employees at such meetings, but attendance shall not be compulsory.

9.2  No employee shall be required to take out insurance other than that required by law and except that which is covered in this Agreement. The Union hereby agrees to conduct and handle any and all campaigns and drives for charitable purposes among its members in such instances as it deems advisable.

## SECTION 10 - UNIFORMS

10.1   Uniforms bearing the Employer's advertisement or a specified color or design shall be furnished by the Employer. All the laundry is to be paid for by the employee not to exceed two (2) laundries a week, if necessary.

## SECTION 11 - GRIEVANCE PROCEDURE, ADJUSTMENT BOARD AND ARBITRATION

11.1  All grievances which cannot be settled directly by the shop steward of the Union with the Employer shall be referred to the business representative of the Union and the Employer or his designated representative.

11.2  The Employer shall be entitled to discharge employees for just cause. Employees claiming they were unjustly discharged shall file a written complaint with the Employer within seven (7) calendar days after such discharge or their right to grievance shall be considered waived and lost.

**11.3**  All complaints concerning a violation of this Agreement and all questions or disputes concerning the meaning, interpretation, application or enforcement of this Agreement which are not settled in the manner above provided within five (5) business days, unless mutually extended, shall be referred to a Board of Adjustment upon written request of either party. Such written request shall specify the nature of the complaint and the proposed remedy.

**11.4**  The Board of Adjustment shall consist of two (2) representatives of the Union and two (2) representatives of the Employer. No member of the Union or representative of the Union directly involved in, or a party to, the dispute and no employer or representative of the Employer directly involved in, or a party to, the dispute shall be eligible to serve as a member of the Board of Adjustment. A decision by a majority of the members of such Board shall be final and binding on all parties. In the event that the Adjustment Board is unable to reach a decision by majority or unanimous vote on any such matter, such dispute may be referred to an impartial arbitrator whose decision shall be final and binding. Each side shall pay one-half (½) of the charges of such arbitrator.

## SECTION 12 - ILLEGAL WORK AND ACTIVITIES (MOONLIGHTING)

**12.1**  The Employer and the Union agree that any employee engaging in auto, truck, bus or motorcycle repair work for profit outside the regular working hours while on the payroll of the Employer shall be subject to immediate discharge and such discharge shall not be subject to grievance procedure. The Union agrees to provide the Employer with evidence of proof of such activities on the part of the employee when discharge is requested by the Union. The Employer agrees that, in instances of discharge initiated by the Employer, proof of violation of this provision will be provided by the Employer.

## SECTION 13 - LICENSE REQUIREMENTS

**13.1**  If a license (smog, lamp or brake) is reasonably necessary to the proper and efficient performance of an employee's work to a substantial degree, the employee may be required to have such a license, provided, however, that an employee assigned to such work shall be given a reasonable time to obtain a license. The requirement of this section may not be used as a basis for discharging or disciplining an employee, or otherwise discriminating against an employee, who cannot reasonably obtain a license due to lack of educational or other qualifications. No employee may be discharged pursuant to this section unless the Employer first files a grievance seeking such discharge and the Employer's grievance is sustained by the Board of Adjustment, which decision shall be final to such grievance.

## SECTION 14 - NO STRIKES OR WORK STOPPAGES OR LOCKOUTS

**14.1** During the period of this Agreement, the Union agrees that its members will not engage in any strike, slowdown or stoppage of work, and the Employer agrees not to engage in any lockouts or layoffs, provided, however, that, after Trustees of Automotive Industries Welfare Fund find that the Employer has failed to pay premiums and administrative costs as provided in the Trust Agreements, it shall not be a violation of this Agreement for the Union to strike.

**14.2** It shall not be a violation of this Agreement, or grounds for discharge or other disciplinary action, for any person covered by this Agreement to refuse to cross any lawful picket line or REFUSE to work behind any lawful picket line established at the Employer's place of business by any other union representing employees of the Employer in an appropriate unit.

## SECTION 15 - VACATIONS

**15.1** For the initial period of service with the Employer prior to June 1, an employee, upon completion of three (3) months' service, shall receive a pro rata vacation with pay computed at the rate of one-twelfth (1/12th) of the weekly wage for each month of employment prior to June 1 in which at least eighty (80) hours were worked.

**15.2** Thereafter, the employee shall receive vacation pay and vacation time off as follows:

From and after June 1 for:

One (1) year's service ..............................five (5) days
Two (2) years' service ............................ten (10) days
Six (6) years' service............................. fifteen (15) days
Fifteen (15) years' service ......................twenty (20) days
Twenty (20) years' service .................. twenty-five (25) days

**15.3** For purposes of computing vacations in subsequent years, if an employee is employed prior to December 1 to the following June 1, that period of time shall be deemed the equivalent of the first year's service.

**15.4** Employees working on their qualifying year who have not completed the full year (June 1st), when terminated, shall be paid vacation pay prorated proportionately for the number of months an employee works at least eighty (80) hours on the qualifying year as though the year had been completed.

**15.5** After fifteen (15) years' service, twenty (20) days. Such additional vacation time is to be scheduled at a time that is mutually agreed to both by the Employer and employee.

**15.6** When a holiday as provided herein falls within an employee's vacation, such employee shall receive an additional day's pay for such holiday or, at the employee's option, may extend his vacation for one day. Vacation pay shall be paid to the employee on the last working day

7

immediately preceding the actual commencement of vacation. Employees shall be required to take a vacation as and when due unless this requirement is waived in writing by the Union in any individual case.

**15.7** Employees shall not be required to take vacations during the months of January, February, March, November and December. The Employer shall post a notice or bulletin of a vacation schedule, according to seniority, no later than the 15th day of March, when practical. Once the vacation schedule has been worked out in accordance with seniority, such schedule becomes mandatory and cannot be changed except by mutual agreement. Vacation pay shall be the employee's actual weekly scale, including over-scale and shift differential but exclusive of overtime and incentive pay.

**15.8** All employees covered by this Agreement who have been in the employ of the Employer three consecutive months or more, whose employment is terminated for any reason, shall be paid proportionately for vacation pay, such payment to be calculated upon one-twelfth (1/12th) of their weekly wage for each month that an employee has worked at least eighty (80) hours for the Employer. Employees entitled to over five (5) days' vacation shall be paid proportionately.

**EMPLOYEE: JOHN SMITH**          **DATE HIRED: JANUARY 1, 1978**

| Years Service | Employment Period | Accrual Rate for Vacation Earned | Earned Vacation Taken from: |
|---|---|---|---|
| | 1-1-78 — 5-31-78 = 5/12 x 40 hours = 16.6 hours | | |
| 1 | 6/1/78-5/31/79 | 1 week | 6/1/79-5/31/80 |
| 2 | 6/1/79-5/31/80 | 2 weeks | 6/1/80-5/31/81 |
| 3 | 6/1/80-5/31/81 | 2 weeks | 6/1/81-5/31/82 |
| 4 | 6/1/81-5/31/82 | 2 weeks | 6/1/82-5/31/83 |
| 5 | 6/1/82-5/31/83 | 3 weeks | 6/1/83-5/31/84 |
| 15 | 6/1/92-5/31/93 | 4 weeks | 6/1/93-5/31/94 |
| 20 | 6/1/2016-5/31/2017 | 5 weeks | 6/1/2017-5/31/2018 |

**SECTION 16 - LEAVE OF ABSENCE FOR UNION BUSINESS**

**16.1** A leave of absence for a reasonable period of time shall be granted for a reasonable number of employees selected by the Union to transact Union business, provided that ten (10) days' written notice is given by the Union to the Employer.

8

## SECTION 17 - HOLIDAYS

**17.1** Employees shall have the following days off with pay:

| | |
|---|---|
| New Year's Day | Thanksgiving Day |
| Presidents' Day | Friday after Thanksgiving Day |
| Memorial Day | Christmas Day |
| Fourth of July | <u>Either</u>: Day before Christmas Day |
| Labor Day | <u>Or</u>: Day before New Year's Day |
| ✓ Employee's Birthday | Employee's Anniversary Date of Hire ✓ |

**17.2** Approximately 50% of the employees are to be off on the workday preceding Christmas holiday and the remaining employees are to be off on the workday preceding the New Year's holiday. The Employer is to post a schedule not later than October 1 of each year, seniority to prevail in selection of holiday. In addition to the above holidays, employees with at least six (6) months of employment shall have **one (1)** additional paid holiday during each year of the contract to be known as **floating holiday**. Selection of floating holiday is to be at the employee's option, but no more than one employee will be authorized a floating holiday on the same day unless mutually agreed, and seniority shall prevail.

**17.3** Those employees electing to do so may take Martin Luther King's birthday off, with pay, by substituting it for the floating holiday. Those employees wishing to exercise this option shall notify the employer prior to December 1 of the preceding year.

**17.4** If a recognized holiday falls on a Saturday, the Employer may recognize said holiday on the Friday preceding or the Monday following, or remain open both days with partial shifts, in which event seniority shall prevail in the selection of Friday or Monday as the recognized holiday. Employer decision on any such holiday falling within the period June 1 through May 31 shall be posted prior to June 1 of each year. When any of the above holidays fall on Sunday, the day observed by the State or nation shall be considered as the holiday. It is understood that, for employees working the Tuesday through Saturday work week, their 6th and 7th days are designated as Sunday and Monday.

**17.5** During the probationary period, no employee shall be eligible to receive holiday pay. However, if such employee is retained as a permanent employee beyond the probationary period, he shall be paid retroactively for any holiday that occurred during such period.

**17.6** In order to be eligible for holiday pay when no work is performed, an employee must work or be available for work on the last regular work day immediately prior to a holiday and the first regular work day immediately following that holiday unless that employee can show a justifiable excuse to the Employer and the Union. Whenever an employee is off the job for reasons of bona fide illness or injury for a period of up to ninety (90) days, the employee shall receive pay for any holiday falling within that time period. Any employee who is laid off or discharged for cause at the end of the employee's work week, as specified in Section 4, shall receive pay for any holiday that falls on the first day of the employee's shift the following week.

17.7 Employees will schedule their birthday holiday in advance and use it. Employees who fail to schedule and/or use their birthday holiday will forfeit the holiday that year.

## SECTION 18 - WAGES

18.1 Day shift minimum hourly wage rate for Journeymen for Mechanics, Electrical, Motorcycle, Radio, Welders, Trimmers, Testers, Towermen, Dispatchers, Service Salesmen, Machinists, Metal, Frame, Body & Fender, Radiator Repair on Straight Salary:

<u>Effective</u>     9/1/04   ............ $27.10

UTILITY MECHANIC:

| | |
|---|---|
| 1st year of employment | 60% of Journeylevel wage |
| Thereafter | 70% of Journeylevel wage |

## SECTION 19 - TECHNOLOGICAL CHANGE

19.1 In the event of technological change which affects any work which has traditionally been performed within the bargaining unit, either party may propose a written re-opener for negotiations to accommodate in a reasonable fashion to such technological change. During such negotiations, the parties will consider the possible establishment of one or more new classifications, with job descriptions and wage rates in relation to skills required and duties performed. If the parties are unable to agree during such negotiations, then the matter shall be referred for final resolution to an interest arbitration. If other unions adopt a similar provision, then any interest arbitrations may be consolidated.

## SECTION 20 - PAYMENT OF WAGES

20.1 All wages payable to employees shall be paid weekly and pay checks, together with itemized payroll deductions, shall be distributed to employees on regularly assigned pay days.

## SECTION 21 - HIGHER WAGES

21.1 Any employee receiving better wages prior to the signing of this Agreement shall not take any reduction in same, unless the Employer gives the Employee thirty (30) days' written notice that the Employer elects not to grant such increase, but in no event shall an employee be paid less than the contract minimum resulting from such increases or the employee's present rate, whichever is higher. Nothing herein shall prohibit the Employer from paying over the minimum wage set forth in this Agreement.

## SECTION 22 - APPRENTICESHIP - (INDENTURED)

**22.1** Apprentices shall be employed and indentured under and pursuant to the applicable laws of the State of California dealing with apprenticeship employment and apprenticeship standards.

(a) The term Apprentice as used herein shall mean a person not less than sixteen (16) years of age who has entered into an agreement (Indenture) to learn the automotive repair and maintenance trade. The Joint Apprenticeship Committee for the Automotive Repair and Maintenance Industry of **San Francisco, Southern Marin, San Mateo and Northern Santa Clara Counties**, which is comprised of an equal number of Employers and Union Employees or their representatives, shall indenture all Apprentices. No apprentice shall be employed unless with the consent and approval of the Joint Apprenticeship Committee for the Automotive Repair and Maintenance Industry of San Francisco or the Union.

(b) The **normal** term of Indentured Apprenticeship shall be four (4) years. The Indentured Apprentice shall have related school instruction of not less than one hundred and forty-four (144) hours a year and not less than five hundred and seventy-six (576) hours for the four-year period of Apprenticeship.

(c) The Indenture Agreement makes it mandatory that the Indentured Apprentice shall attend a related school of instruction as designated by the Joint Apprenticeship Committee. Indentured Apprentices attending such a school on their own time as a requirement of their apprenticeship shall be compensated therefor at the rate of Two Dollars ($2.00) per hour up to a maximum of Eight Dollars ($8.00) per week as a reimbursed expense. The Employer is required to pay for attendance in class only upon presentation by the Indentured Apprentice of a class attendance record certified by the school.

(d) Upon the completion of the fourth year, the Indentured Apprentice shall receive the Journeyman's rate of pay, subject to the approval of the Joint Apprenticeship Committee. Seniority shall commence on the date of hire. One Indentured Apprentice may be employed in a shop where there is a full-time Journeyman working, and one additional Apprentice may be employed for every five (5) Journeymen thereafter. Apprentices shall be under the general supervision of a Journeyman at all times. The Joint Apprenticeship Committee is authorized to change the Apprentice to Journeyman ratio, if it deems necessary.

(e) After a probationary period of three (3) months, no Indentured Apprentice shall be laid off or permitted to leave the place of employment, except by consent of the Joint Apprenticeship Committee. No Indentured Apprentice shall be employed in any shop unless there is a fair opportunity for him to acquire the fundamental knowledge of the trade.

(f) When business conditions require a reduction in the work force, Apprentices shall be laid off by **seniority within classification**. An Apprentice on layoff shall keep recall rights for one (1) year after the date of layoff. Recall rights of Apprentices shall not preclude bona fide replacement of a Journeyman.

(g) Indentured Apprentices shall be paid **the minimums** as follows:

1st year of employment ..................................... 50% of Journeyman rate of pay
2nd year of employment .................................... 70% of Journeyman rate of pay
3rd year of employment ..................................... 80% of Journeyman rate of pay
4th year of employment ..................................... 90% of Journeyman rate of pay

Thereafter, Journeyman rate of pay.

## SECTION 23 – APPRENTICE TRAINING FUND

23.1  The Employer agrees to pay into an Apprentice Training Fund, on the first day of each month, the sum of Four Dollars ($4.00) per month for each employee working in a classification within the jurisdiction of Local Lodge No. 1414. Payment will be due for each employee who is on the payroll of the Employer as of the first calendar day of each month. The Employer further agrees and consents to become signatory to the Trust Document and be bound by any and all provisions thereof.

## SECTION 24 – HEALTH, $25,000 LIFE, DENTAL, ORTHODONTIA, PRESCRIPTION DRUG, VISION CARE, DISABILITY and RETIREE INSURANCE BENEFIT PLANS

24.1  The Employer agrees to abide by all the terms and conditions of the Trust Agreements creating Automotive Industries Welfare Fund as it has or may be modified, altered or amended and all regulations and rules of the Board of Trustees of such Trust. The Employer further agrees to abide by the method of selection of the Trustees of such Trust as specified in said Trust.

24.2  It is understood and agreed that the Health, Life, Dental, Orthodontia, Prescription Drug, Vision Care, Disability and Retiree Health and Welfare benefits herein granted to Union members shall be purchased by the Employer and shall provide the benefits set forth in the documents identified as Automotive Industries Health and Welfare Agreements, Disability Plan and Retiree Health and Welfare Agreements which are attached hereto and made a part of this Agreement.

24.3  The benefits to be provided and the method of filing claims shall be communicated to the covered Employer and Employees by the Administrative Office of Automotive Industries Welfare Fund.

24.4  The Employer agrees to pay the amounts necessary to maintain the level of benefits through the term of the Agreement. In the event federal legislation is enacted or amended during the term of this Agreement which substantially impacts the benefits provided herein, or the cost of said benefits, either party may seek a re-opener, limited to this Section. Upon written notice requesting re-opener, the parties shall engage in good faith negotiations. If the parties are unable to reach agreement thereunder, then the dispute may be submitted to arbitration as agreed herein, except that the arbitrator shall only be authorized to adopt the final proposal of either the Union or the Employer.

## SECTION 25 - A & S DISABILITY PLAN

**25.1** The Disability Plan is designed to be integrated with State Disability Insurance or Workers' Compensation benefits, as the case may be, and to pay benefits subject to Plan provision and limitations for a maximum of thirty-nine (39) weeks, starting with the first (1st) scheduled work day when hospitalized or disabled as a result of accident and with the fourth (4th) scheduled work day when disabled as a result of sickness not requiring overnight hospitalization.

## SECTION 26 - RETIREE HEALTH AND WELFARE

**26.1** If the Employer fails to put the Welfare Insurance Plan into effect and pay the premiums for the insurance benefits herein provided for, the Employer shall be personally responsible to the Employees herein covered for the benefits which would have been provided by such coverage.

## SECTION 27 - PENSION PLAN

**27.1** The Employer agrees to abide by all of the terms and conditions of the Trust Agreement creating the Automotive Industries Pension Trust Fund as it has been or may be modified, altered, or amended and all regulations and rules of the Board of Trustees of such Trust as may be adopted from time to time. The Employer further agrees to abide by and be bound by the method of selection of the Trustees of such Trust as specified in said Trust.

**27.2** The Employer agrees, effective September 1, 2004, to pay to the Administrator of the Automotive Industries Pension Trust Fund a sum of Four Hundred Dollars ($400.00) per month per employee.

**27.3** If the Employer fails to put the pension plan into effect and pay the contributions for the pension benefits herein provided for, the Employer shall be personally responsible to the employees herein covered for the benefits which have been provided by such coverage.

## SECTION 28 - JURY DUTY

**28.1** Employees on jury selection or duty shall be paid two-thirds of the wages (without loss of fringes) they would have earned had they remained on their work assignment, up to a maximum of eighty (80) working hours per contract year.

**28.2** Employees will be required to provide proof of jury service.

**28.3** An employee dismissed from jury selection will be expected to return to his work assignment provided it is possible for him to spend at least two (2) hours on the job.

## SECTION 29 - NON-DISCRIMINATION

29.1 The Employer and the Union agree not to discriminate against any individual with respect to hiring, compensation, terms or conditions of employment because of such individual's race, color, religion, age, sex, or national origin; nor will they limit, segregate or classify employees in any way to deprive any individual employee of employment opportunities because of his race, color, religion, age, sex or national origin. The Company will abide by all State and federal laws regarding handicapped and disabled persons.

29.2 Wherever the pronoun *he* or *she* or any other pronoun denoting sex is used in this Agreement, it shall be deemed to apply equally to members of both sexes.

## SECTION 30 - MANAGEMENT RIGHTS

30.1 The management of the Employer's operation and the direction of the employees, including all of the rights, powers, authority and prerogatives which the Employer has traditionally exercised, are expressly reserved to the Employer. The choice, control and direction of supervisory and management staff shall be vested solely and exclusively in the Employer. The Employer shall have the right to close, partially close or transfer facilities and departments. The Employer shall give the Union thirty (30) days notice if there is a closure, partial closure or transfer to other facilities, if possible, except for an unforeseeable emergency.

## SECTION 31 - DRUG AND ALCOHOL TESTING

31.1 Employees shall not be under the influence and/or possession of controlled substances or alcohol (without written permission from a physician including verification by the physician that such substances will not affect the employee's ability to perform his work in a safe manner) at the Employer's premises and/or when performing work for the Employer.

31.2 The Employer shall have the right to conduct urinalysis testing only of employees for alcohol and/or illegal substances, at the Employer's expense, provided that:

A. There shall be no random or unit-wide testing of employees, except those employees who test positive for reasonable cause and/or following rehabilitation for abuse.

B. The Employer may have an employee tested immediately if the Employer has reasonable cause to believe, based upon the employee's conduct while performing work for the Employer, that the employee has impaired faculties and is under the influence of alcohol and/or controlled substances.

C. The Employer shall only conduct urinalysis tests.

D. All tests shall be conducted by a facility that meets the requirements of a federally governed facility and the voiding of urine samples must be done by or under the supervision of the designated laboratory. The Employer will designate qualified laboratories.

E.  Two tests will be performed on each positive sample: EMIT and Gas Chromatography/Mass Spectrometry. The positive tests will be reviewed by a medical review officer. The testing levels will be those published by the Department of Transportation (DOT), as amended from time to time, and attached to this Agreement.

F.  There will be an optional split sample procedure available to employees. If the first laboratory tests the specimen as positive pursuant to the testing methodology, the Employer shall notify the employee and the Union of such positive results. Upon written request of the employee, if made within ninety-six (96) hours of the Employer mailing notice to the employee and the Union that the first test was positive, the second urine specimen will be forwarded by the first laboratory to another independent and unrelated, approved laboratory of the party's choice for GC/MS confirmatory testing of the presence of the drug. In the event the employee does not request implementation, the results of the first laboratory tests shall be conclusive and binding on the employee. If an employee chooses the optional split sample procedure, disciplinary action can only take place after the first laboratory reports a positive finding and the second laboratory confirms the presence of the substance and/or alcohol. However, the employee may be taken out of service once the first laboratory reports a positive finding while the second test is being performed. If the second laboratory report is negative, the employee will be reinstated and made whole for all lost time due to the testing process. If the employee opts for the split sample procedure, contractual time limits on disciplinary actions are waived. All notices and requests given under this section shall be in writing and mailed certified U.S. mail, postage prepaid, return receipt requested.

G.  The Employer shall observe all applicable laws as to the confidentiality of the medical information obtained through these procedures.

H.  The first time an employee tests positive on the Employer's test, and on the split sample (if one is requested by the employee), the employee shall have the option of undergoing a recognized rehabilitation program and shall be granted a leave of absence as described in Section 1025, et seq., of the California State Labor Code, in lieu of being disciplined.

I.  If the employee for whom the Employer has reasonable cause refuses to undergo the testing as described herein, if an employee refuses to undergo treatment, or if an employee tests positive a second time within a one-year period after having undergone treatment, the Employer reserves the right to take disciplinary action, up to and including discharge of employment.

J.  To the extent the above provisions conflict with any applicable law, the rights and provisions herein shall be performed in accordance with applicable law.

## SECTION 32 - UTILITY MECHANIC

32.1  In order to be eligible for employment under this classification, the person to be employed must not have been previously employed as a Journeyman Mechanic under a collective bargaining agreement between District 190 and any employer, unless this requirement is waived by the Union. The Employer shall be authorized to rely upon a certificate by the employee that this eligibility

requirement is met, but upon being furnished proof by the Union that any employee under this classification was previously so employed, employment under this classification shall forthwith be terminated.

**32.2 Authorized Duties:** The Utility Mechanic may perform light mechanical repair work, consisting of: brake adjustments; exhaust equipment and muffler installation; shock absorber installation; wheel-balancing; headlight and taillight adjustments and replacements; replacement of simple mechanical parts such as fan belts, hoses, valve cover gaskets, battery, battery cables, and tiedowns, radiators, cooling system service (flushing only).

**32.3** The Utility Mechanic shall not be required to use electronic equipment or test equipment.

**32.4 Number to be Employed:** An Employer may employ one (1) Utility Mechanic for the first two (2) Journeyman Mechanics and one (1) additional Utility Mechanic for each five (5) additional Journeyman Mechanics regularly employed.

**32.5 Employment Status:** Employees under this classification shall have a separate seniority list and shall be entitled to the fringe benefits and other provisions of the Agreement which are not in conflict with this classification description.

**32.6 Journeyman/Apprentice Mechanic Protection:** No Journeyman or Apprentice Mechanic shall suffer loss of employment because of this classification; nor shall such a Journeyman or Apprentice employed by an individual Employer be laid off while a Utility Mechanic is employed by said individual Employer.

**32.7 Employer Certificate:** Each employee to be employed under the provisions of this classification shall complete a certificate and obtain the signature of an authorized agent of the Employer.

## SECTION 33 - EXPIRATION AND REVISION

This Agreement shall be in effect on **September 1, 2004**, and shall continue in effect until **September 1, 2006**, and from year to year thereafter for like terms, subject, however, to revision by notice in writing by either party to the other party sixty (60) days prior to the anniversary date hereof. During such sixty (60) day period, conferences shall be held looking toward a revision of this Agreement. If negotiations extend beyond the anniversary date, or expiration of the Agreement, no change shall be made in any terms or conditions of employment unless expressly agreed to by the

parties or until negotiations are terminated by economic action of either party after first giving forty-eight (48) hours' written notice thereof. All revisions and wages shall be effective as of the anniversary date of said Agreement.

DATE: 12/15/04

**T.G.C. 24-HOUR TRUCK REPAIR, INC.**

BY: _____
John McGuire

PENINSULA AUTO MACHINISTS
LOCAL LODGE NO. 1414 AND
MACHINISTS AUTOMOTIVE TRADES
INTERNATIONAL ASSOCIATION OF
WORKERS

BY: _____
John R. Moran

acb ope-3-afl-cio-69  100104